## INTERNATIONAL SHOE CO. v. KAHN.

### In re KAHN.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

No. 2611.

1. **Bankruptcy ⬡⟶407(6)—Discharge should be denied bankrupt, who, to obtain credit, makes false financial statement, providing that it shall be binding for continuing credit, unless changed.**

A false financial statement may have a continuing effect, so as to bind one who corruptly issues it to obtain credit, and so where a bankrupt, to obtain credit, makes a false financial statement, which provides that it shall be binding for continuing credit, unless changed, and a creditor extends credit on the strength of the statement, within the time in which bankrupt intended statement to be effective, discharge should be denied.

2. **Bankruptcy ⬡⟶407(12)—Test whether false financial statement bars discharge is whether statement was binding on bankrupt when acted on.**

Test whether a false financial statement, given on one date and acted on at a later date, bars discharge of bankrupt, is whether at the time acted on the statement was still binding on bankrupt, which depends on whether the sale on credit was the proximate result of the statement, and whether its original falsity was the thing that worked the mischief.

3. **Bankruptcy ⬡⟶407(12)—Mere lapse of three years from bankrupt's issuance of financial statement held not alone to determine whether it was in force when credit was extended.**

Mere lapse of three years between time when bankrupt issued financial statement, and extension of credit thereon, *held* not alone to determine whether it was still in force and binding on bankrupt when credit was extended.

4. **Bankruptcy ⬡⟶407(12)—Whether financial statement is to be given continuing effect for any given period depends on parties' intent.**

Whether a financial statement is to be given a continuing effect for any period of time, so as to bind bankrupt, who issued it, depends in the first place on the intention of the parties.

5. **Bankruptcy ⬡⟶407(12)—Bankrupt held justified in believing financial statement was accepted as representing his financial condition for ensuing year only, notwithstanding provision making it binding until changed.**

Notwithstanding provision of financial statement, issued by bankrupt to obtain credit, that it should stand good for subsequent purchases unless there should be a material change in his financial condition, with promise to give notice of any such change, bankrupt *held* justified in believing that statement would be accepted as representing his financial situation for the ensuing year only, in view of recital that financial statements should be made at least once a year.

6. **Bankruptcy ⬡⟶407(1)—Statutory grounds for denying discharge to bankrupt are not to be extended by construction (Bankruptcy Act, § 14b, being 11 USCA § 32[b]).**

Grounds for denying discharge to bankrupt, specified in Bankruptcy Act, § 14b (11 USCA § 32), are not to be extended by construction.

7. **Bankruptcy ⬡⟶407(6)—To prevent discharge, bankrupt must have obtained money or property on credit on false writing, and breach of contract, deliberate fraud, oral statements, or conduct are insufficient (Bankruptcy Act, § 14b, being 11 USCA § 32[b]).**

To prevent discharge in bankruptcy, under Bankruptcy Act, § 14b (11 USCA § 32) bankrupt must have obtained money or property on credit on materially false statement in writing, and breach of contract, or even deliberate fraud, or oral statements or conduct of bankrupt, no matter how false and fraudulent, are insufficient.

8. **Bankruptcy ⬡⟶407(12)—Bankrupt's failure to notify creditor of change in financial condition, shown by three year old financial statement, held not to defeat discharge; "false written statement" (Bankruptcy Act, § 14b, being 11 USCA § 32[b]).**

Bankrupt's failure to notify creditor of material change in financial condition, in accordance with agreement on printed form of statement for obtaining credit, made three years before any material change occurred, *held* not to constitute the making of a materially "false written statement," within Bankruptcy Act, § 14b (11 USCA § 32), defeating his discharge in bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False Statement.]

Appeal from the District Court of the United States for the Western District of North Carolina, at Asheville, in Bankruptcy; Edwin Y. Webb, Judge.

In the matter of T. L. Kahn, bankrupt. From an order (16 F.[2d] 501) discharging bankrupt over objections of the International Shoe Company, a creditor, said creditor appeals. Affirmed.

Zeb F. Curtis, of Asheville, N. C. (J. D. Williamson, of St. Louis, Mo., on the brief), for appellant.

R. R. Williams, of Asheville, N. C., for appellee.

Before NORTHCOTT, Circuit Judge, and SOPER and ERNEST F. COCHRAN, District Judges.

SOPER, District Judge. T. L. Kahn, having been duly adjudicated a bankrupt in the District Court on January 5, 1926, filed a petition for discharge from his debts under the Bankruptcy Act (11 USCA). The International Shoe Company, a creditor of the bankrupt, referred to herein as the company, filed specifications in opposition to the discharge on the ground that the bankrupt had obtained certain goods, wares, and merchandise from it upon a materially false statement in writing made by him for the purpose of obtaining credit from the company. The statement in question was made by him on April 19, 1922, upon a printed form furnished by the company. It showed that the bankrupt was then possessed of assets in the amount of $31,000, including Liberty Bonds in the amount of $4,000, and owed liabilities to the amount of $6,000, so that his net worth was $25,000. The form contained the following words in print, over the signature of the bankrupt:

"The above statement is made for the purpose of obtaining credit from * * * International Shoe Company, now or hereafter, and the same shall stand good as to any subsequent purchases unless there should be a material change, in which case I will notify them before making further purchases from them."

It also contained the following printed statement over the signature of the company:

"Please fill out the following blank and return the same to us. This statement will be used by us only for our confidential information. It is a well-established business principle that financial statements should be made at least once a year. The largest and strongest finance companies do this, because they recognize that character, capital, and ability are the basis of all credits. * * * In business it is necessary to take careful inventory at least once a year; to keep an accurate set of books, showing all purchases and sales, both cash and credit."

When the statement was made, it was a correct account of the bankrupt's financial condition. Thereafter from time to time the company sold goods to the bankrupt on credit. During 1922 there were sales on credit to the amount of $3,852; in 1923, $4,738.19; in 1924, $4,673.57. All of these bills were paid when they matured. Between May 15, 1925, and October 31, 1925, the company sold to the bankrupt merchandise to the amount of $2,635.30, of which $1,623.04 remained unpaid at the time of bankruptcy. Thus it appears that the bankrupt paid for nearly 90 per cent. of the goods purchased by him in the four-year period, and greatly reduced the amount of his purchases during the last year, when, it is said, the fraud occurred. These facts, taken alone, do not tend to prove an intent to defraud on his part. But a material change had taken place in the financial condition of the bankrupt when purchases were made in the early part of 1925. He then owed the sum of $12,000, instead of $5,000, and his net worth was not $25,000, as shown by the written statement. He had also disposed of the Liberty Bonds. But he did not notify the company, as he had agreed to do. The company, on its part, sold the goods during 1925, relying on the statement of April 19, 1922, and believing that the financial condition of the bankrupt remained unchanged. Had it known of the change, it would not have accepted the orders and extended the credit. The case was tried on an agreed statement of facts, and the bankrupt did not testify.

On this statement of facts, the District Court decided that the discharge should be granted. The court was of the opinion that there was no evidence that the bankrupt designedly, and with corrupt intent, undertook to deceive the company for the purpose of obtaining the goods in 1925. The company did not at any time in the three preceding years remind the bankrupt of his earlier financial statement, and the court thought that it was reasonable to assume that the bankrupt forgot (if he ever read the finely printed words) his promise to notify the company of a change in his financial condition. The court, moreover, held that a broken promise of the buyer, contained in a true statement of his resources, whereby he agreed to notify the seller of a change in financial condition, did not bring him within the terms of section 14b of the Bankruptcy Act (11 USCA § 32), so as to require the denial of the discharge.

[1, 2] There can be no doubt that a false financial statement may have a continuing effect, so as to bind one who corruptly issues it with the intention of obtaining credit. The Supreme Court in Gerdes v. Lustgarten, 266 U. S. 321, 45 S. Ct. 107, 69 L. Ed. 309, has expressly approved the rule laid down in Ragan v. Cotton (C. C. A. 5th Circuit) 200 F. 546, 550, and Haimowich v. Mandel (C. C. A. 3d Circuit) 243 F. 338, 342. Where a

bankrupt, for the purpose of obtaining credit, has made a false financial statement, which provides that it shall be binding for continuing credit, unless changed, and a creditor has extended credit upon the strength of the statement, within the time in which the bankrupt intended the statement to serve that end, the discharge should be denied. The test whether a false statement, given upon one date and acted upon at a later date, operates as a bar to a discharge, is whether at that time the false statement was still in force and binding upon the bankrupt, to be determined according as it is found that the sale on credit was or was not the proximate result of the statement, and that its original falsity was or was not the thing that worked the mischief. [3-5] It follows that the mere lapse of time between the statement in 1922, and the extension of credit in 1925, does not of itself determine the case; but there are other circumstances present which persuade us that the decision of the District Court was correct. Whether or not a statement of financial condition is to be given a continuing effect for any given period of time depends in the first place upon the intention of the parties. We are of the opinion that the statement in this case indicates that it was not to be kept alive as a true account of the bankrupt's condition for so long a period as three years, notwithstanding the express provision that it should stand good for subsequent purchases, unless there should be a material change, and the promise of the buyer to give notice of such change. Obviously there must be some limit to the vitality of such a promise, although none is expressed. Considering the exigencies of business affairs, and the general practice current in business circles, it would be unreasonable to construe a statement as continuing indefinitely, in the absence of a clear expression of intent in the instrument itself. In the case at bar there is the distinct announcement on the part of the company, coupled with its request for a statement, that financial statements should be made at least once a year. We believe, therefore, that the bankrupt was justified in concluding that the statement which he gave in April, 1922, would be accepted as representing his financial situation for the ensuing year, but that thereafter it would not be considered as a fair statement of his financial responsibility.

The decision of the case need not rest on this ground alone. The more important consideration is that the written statement upon which the objector relies was a true statement when it was given. It must therefore have been remade or renewed after it became false, in order that it may be used as ground for the refusal of the discharge. This was done in effect, the objector argues when, under changed conditions, the bankrupt ordered goods in 1925 and failed to carry out his promise to give notice of the change. It is contended that thereby he renewed the original statement, and asserted that his condition in 1925 was substantially the same as in 1922.

[6] This argument would be more persuasive if the company were merely attempting to show that it had parted with property by reason of fraud practiced upon it by the bankrupt, as in Howell v. Berger, 19 Misc. Rep. 315, 44 N. Y. S. 259, and Atlas Shoe Co. v. Bechard, 102 Me. 197, 66 A. 390, 10 L. R. A. (N. S.) 245, which the company cites. But the burden upon the company is more exacting, and its object is more precise. The purpose of the suit is to withhold from the bankrupt his discharge, which may be done only if it is proved that the bankrupt has committed one or more of the acts specified in section 14b of the Bankruptcy Act. It is well settled that the provisions of this section, wherein grounds in opposition are specified, are not to be extended by construction. Robinson v. Williston (C. C. A.) 266 F. 970; In re Kaufman (C. C. A.) 239 F. 305; In re Jacobs (C. C. A.) 241 F. 620; Peck v. Lowenbein (C. C. A.) 178 F. 178.

[7, 8] The sole question is whether the bankrupt in 1925 made a materially false statement in writing to the company for the purpose of obtaining credit. The only written statement in the case was true when it was given. In what manner was it reissued, so as to become a false written statement in 1925? It was not mentioned in that year by either party. In fact, it was never referred to in any communication between the parties after it was made in 1922. Republication, if any there was, must be inferred solely from the bankrupt's purchases in 1925, and his breach of the promise to communicate change of financial condition. Reprehensible as this course of dealing may have been, assuming that the promise was still effective, it did not amount to the issuance of a false statement in writing. It must be borne in mind that it is not enough to prove breach of contract, or even deliberate fraud. Oral statements or conduct of the bankrupt, no matter how false and fraudulent, are not within the terms of the statute. False writing must be proved if the discharge of the bankrupt is to be refused, under the clause of the act in question. We do not doubt that circumstances may arise in which a written statement, originally true, may be so reaffirmed as to constitute un-

der changed conditions a false statement in writing, but such circumstances, in our opinion, are not found in the present case.

The order of the District Court is affirmed.